Counsel, I hope you understand how unacceptable it is for you to hold up the entire court and your opposing counsel who's come from Washington DC while you're late. It's very unacceptable to be late and not to be present in the courtroom when it's time for your argument to take place. I don't, I really don't understand that because it says you're from Rosemead. What is it, what is the nature of your very important appointment that you All right, counsel. Well, you may proceed. We're ready for you. Good morning, I represent the petitioner, a male, a Chinese male. Speak up please, I can't, would you turn it up a little for her? Speak it into the microphone. Good morning, I represent the petitioner. What's your name? My name is Armina Ibrahimian with Soy and Associates. Can you slow down? I represent the petitioner. He's a male. I'm sorry, I cannot hear you. Maybe we turn it up or speak between the two microphones. Good morning, my name is Armina Ibrahimian. I'm with Soy and Associates. I represent the petitioner. He's a Chinese male who married in 2004 in China. His first child was born in the year 2005. He had a daughter. The wife had a C-section. Six months after the first child was born, she was forced to have an IUD inserted in her to make sure she doesn't get pregnant again because the law in China says that if you have a female, the next child can be born only four years after. Despite the fact that the IUD was inserted in her, in 2006, a year later, they discovered that she was pregnant again. They wanted to have this child, so they did hide at their aunt's house, and the child was born. We have read your briefs, so it would be helpful if you could just direct. I'd like to know, given the lack of detail in Chen's story of how he got in the country, why is it unreasonable to find his testimony not credible? The point that I was trying to get at is that the main fact in this case is that the wife had a forced abortion and that they were hiding from the authorities, and then after the second child was born, they wanted either one of them to be sterilized. They wanted the wife to be sterilized, but because she was having serious problems, because she already had two C-sections, she was not well, so they wanted him to be sterilized. So these are the key issues, whether there was past persecution or not. The fact that he couldn't remember the exact details of what happened when he first arrived in America and what happened at the Houston airport, he arrived, we know he's here, so he had no reason to be dishonest about that. The key issue is what happened with his wife. Did an abortion actually take place? So we feel that it's unreasonable for the judge to focus on that fact, that how come he couldn't remember. There's a really strong case by the Ninth Circuit that we cited. It's the Shire v. Ashcroft case, and the facts of that case are quite similar. It's a Somali individual who also fled persecution, and he was not so clear. There's lapses in his memory of exactly what happened, and the court found that it's unreasonable to hold that against somebody, especially when they're fleeing persecution and they've been through some kind of trauma and they get here. So to hold that against a petitioner is unreasonable and is unfair. I think that we did a pretty good job of arguing that, and on the cases that we cited, that the judge was basically fishing for reasons, and it really doesn't go to the heart of the claim. So is this a post-Real Idea case or a pre-? It's a post. It's a post, okay. So the few other issues that we're focused on, we also feel that it was just unreasonable for the judge to claim that he wasn't detailed because the petitioner was describing the wife's gynecological problems, and he did, actually, a pretty decent job to say that she had an infection and that she had a decay of the uterus, and she wasn't feeling well. She was bleeding, and we cited all the sections where the petitioner stated that the wife wasn't feeling well. Also, the wife told him, and that's his wife, that these are the problems. He was forthcoming as to exactly what issues the wife was having. So it was unfair for the judge to be so critical about the fact that he didn't do a better job as to describing what the wife's medical condition was. There was an issue, how come we didn't present any medical documents, and the petitioner did a pretty decent job to explain that it was quite some time ago and that he believes that the documents have been lost, and that they did try and obtain documents, but they couldn't. It is a Real ID Act, and if the documents are not reasonably available, then the judge shouldn't hold it against him. And also, I want to point out that I feel like if the judge was attacking the abortion issue, or even when they came to take his wife to undergo the forced abortion, the petitioner fought them off and begged them, and he was actually punched, and he was punched in the face, punched in the stomach, and he was kicked. And the judge didn't have any credibility issues as to these really important facts, whether an abortion really took place, whether he really resisted the forced abortion. Instead, he was focusing on, well, you were evasive about certain things, but in fact, he wasn't evasive at all. The key issues he was very clear about, and there was no issues. So it was really only about his description about the gynecological issues, which we feel like he did clearly address. And also, what happened exactly when he arrived at the airport. Well, we know he arrived. There's no reason for him to lie about that, and that does not go to the heart of the claim. And the other issue is that he felt that how is it possible that you could register your son's birth, but you're hiding from the authorities. Well, he explained that they had to register the child's birth. First of all, they paid a 6,000 RMB fee to make sure that they could register the child because the child is not registered, doesn't have any identification, can't go to school. So they paid the fee so that the child can be registered. And also, they're registering it with a different bureau, not with the family planning authorities. So he clearly explained why he was able to register the child's birth. And then the judge also had an issue with why, if you're hiding, why would your wife go to the hospital when she's not feeling well? Well, if somebody's not feeling well, what are they going to do? I mean, if she was pregnant, even, you know, she's not going to have the child at home. She's going to have to go to the hospital. I mean, she's a mother of two. If she's not feeling well, it was just unreasonable for the judge to expect the petitioner's wife to not go to the hospital if she's not feeling well. So I feel like the issues that the judge raised were just absolutely unreasonable, and his reasons were unfair. And I think that we really addressed all these issues in our briefs, and I would ask that you carefully consider it. To be honest, Counsel, can I ask you one question about the IJ disbelieves the fact that Chen had, I think there are two, simply unbelievable and highly questionable, because Chen didn't know about his circumstances of coming. He didn't know anything about the, quote, snake head. Why would he know anything about that? What's the answer to that? Why would somebody know a lot about the smuggler? Right. I mean, I think, you know, he physically went through the motions, so he should know what happened at the airport, what was given to him, was there a picture on it, was it your passport? And he actually stated that it was. He explained. And we have it all in there. We quoted exactly what he said. So, you know, according to, I mean, we quoted him. I don't want to waste time and repeat it because it's, you can read it. But he said that a document was given to me. It was, yes, it was my passport. Yes, my picture was on it. He just wasn't clear whether he saw immigration officials. But he remembers being put in a room. He remembers getting a little white card, which is your I-94. Back then it used to be a little white card. Now they don't use them anymore. So, I mean, I feel like, you know, I mean, that's how he entered. If you'll let me interrupt. Wasn't there evidence in the record that the smugglers controlled everything that he did? He didn't know the language. He didn't know anything about it. So wouldn't that be one reason that maybe he seemed confused and inconsistent? Absolutely. I absolutely believe that exactly was the case. On top of that, he was being smuggled from Peru, and there was evidence that he was in custody for, like, 20 days in Peru trying to get here. And it's a nerve-wracking journey, a dangerous journey. And, of course, he didn't remember exactly what happened in a foreign country, that he doesn't even speak a word of English. So absolutely, I mean, it just doesn't go to the heart of the claim. Like I said, there's so many more important issues that the judge could have been critical about, but he wasn't. He focused on things after the, you know, the issues that pertains to the persecution. So, I mean, the petitioner had absolutely no reason to lie about what happened at the airport. It wasn't going to change anything, you know. And more importantly, about the gynecological issues, you know, whether he knew exactly – I mean, first of all, he was very clear on exactly what happened, but that doesn't change the fact that there was a forced abortion. Interestingly – Do you want to save 17 seconds for rebuttal? Okay, thank you. Absolutely. Thank you so much. Good morning, Your Honors. May it please the Court, Rebecca Nahas for the United States Attorney General. I'd like to remind the Court that immigration judges' adverse credibility findings, particularly after the Real ID Act, are reviewed under the extremely deferential substantial evidence standard of review because the immigration judge is in the best position to assess the witness's credibility because he's actually observing the testimony. And here, substantial evidence supports the immigration judge's adverse credibility finding for three reasons. I'll start with petitioner's testimony regarding going and hiding following the birth of his second child. He claimed that the family planning office required his wife to be sterilized and she didn't want to be sterilized, so they went into hiding. And during that time period, while he was allegedly in hiding, he admitted that he registered his son with – I believe it's either the police station or the health bureau or both. I think the record suggests both. And the fact that he was in hiding is – excuse me, the fact that he was willing to register his son at the health bureau or at the police station contradicts his testimony that he was afraid and in hiding. You know, petitioner argues that there's no connection between the health bureau and the family planning office, but petitioner's own testimony suggests that there is a connection. He testified that he paid the fine that was imposed by the family planning office in order so that he could register his son. So the two are connected. The paying of the fine allowed him, enabled him to register his son. This is similar to his testimony where he took his wife to the hospital. But in both those instances, when you have a small son who needs to go to school, his wife is in pain. Even though he was hiding, he put their interests ahead of his fear of being caught. Well, Your Honor, I would point out that at this stage, both him and his wife were afraid because the family planning office said, you have to pay a fine and your wife has to be sterilized. So I think that the hiding inconsistency is based on two points. One is that petitioner felt comfortable to register his son at the health bureau, and I believe that is supported by substantial evidence. And two is that his wife, who was also in fear and in hiding, went to a hospital to check to see if she was pregnant, again in violation of the family planning office policy. And I would point out, Don, it's a Ninth Circuit case that had a similar set of facts. In that case, petitioner had a fear of the TBD in Sri Lanka, and the TBD was a combined military and police force. And the court found that the petitioner's fear of the TBD was incredible because he had numerous encounters with the local police. And the court rejected the idea that there was no connection between the TBD and the local police because the petitioner's own testimony was that he went to the local police to help his friend be released from jail who had been arrested by the TBD. So it's a very analogous case where the petitioner's own testimony here, Chen saying that I had to pay the fine in order to register my son, shows that there is that connection. It wasn't true that if he didn't register his son, the son would not be eligible for any government benefits of any kind? I believe that's correct, Your Honor. So he did give explanations as to why he acted in a particular way. Does that show that he's inconsistent? I mean, he's hiding, but his son needed to get benefits, and he put that consideration over the fact that he would be discovered. Your Honor, I think that your point, I understand your point, but I don't think Petitioner, when confronted with the inconsistency, why were you in hiding, or excuse me, why did you feel comfortable registering your son if you were in hiding? He didn't provide the explanation that Your Honor has provided, that there was all these important benefits attached. I think that the record probably has evidence of that. But when confronted, he was incredibly nonresponsive and evasive. I can repeat. Was he speaking his – was he through an interpreter? Yes, Your Honor. And was there some indication that he might not have been fully aware of what he was being asked? There's no allegation of that. Petitioner hasn't raised that sort of challenge. All right. So this issue about hiding, didn't he go – doesn't the testimony indicate that he went into hiding after he paid the fine and registered the son? No, that he – I found what you're saying. But if you actually read the transcript, what he's saying is inconsistent. So the IJ was incorrect in its finding. So originally the Petitioner said that he registered his son in December 2006 and he went into hiding in February 2007, but later he admitted that it was in February 2007. And the reason why that date is sort of very specific is the birth certificate of the second son is in the record and it was registered in February 2007. And so Petitioner admitted later. And I can find the specific AR site. Your Honors, may I provide this site in a 20HA because I want to use the remaining time to address the other two points? That's fine. I wanted to address the arrival, the inconsistency about Chen's arrival in the country. Ms. Nahas, maybe let me – the administrative record, I'm at page 65 now. The judge explained that Chen's testimony about how he entered the United States to the House of Representatives at the Houston airport was not, quote, reasonable. And then he goes on to say that his story of his arrival was, quote, vague and evasive. Here is my understanding, and I like the way you reminded us about the standard of review because that doesn't mean that we only look at the evidence that supports the decision. Don't we also look at the evidence that detracts from the conclusion? So how is not knowing about the smuggler, how is that evasive and how is that unreasonable? What's the evidence that supports that? Sure, Your Honor. I think the idea was that he was provided three or four opportunities to explain how he entered the country, and each time he provided a shifting and vague account. Tell me more about that. What were the shifting accounts? Sure. At AR-144, he testified that he did not have a visa when he entered the United States. He said it directly, I did not have a visa. But then later at 177, he said, I even had a little white card which had the visa record. So, you know, his account sort of shifted. And then later he said at AR-145 that the immigration inspector took him to the little room when he first entered the airport. And then later he said, when I first got to the airport, a snakehead at 185, a snakehead told me to wait in the bathroom until the line died out, and then he found himself in a room. It was just a very confusing muddled account. So this is the issue I have with all of that, which is that doesn't even relate to his claim of past persecution. So how can it be a basis for saying, you know, he's not credible as to his claim of past persecution? Your Honor, this is a post-Real ID Act case, which means that the invoices – But it doesn't have to go to the heart, but it still has to relate. Well, I think going to the heart and relating are one and the same. No, they're not. Relating is a much broader standard. In fact, that's how the IJs now apply it. Well, I think that the way that I see it is that the Real ID Act was intended to provide immigration judges, the judges as the triers of fact, more leeway in weighing many different factors and not tying their hands to issues that are really critical to the asylum claim. But turning to an issue that was critical – What I did say – Sorry. And I realize that you're getting – I don't want to take up all your time, but the IJ didn't question Chen's testimony that the smugglers locked him up in rooms in Ecuador and Peru for seven months, that he feared the smugglers would harm him, that he did not know what was going on because he depended on the smugglers throughout the entire process. He didn't speak English. It seems to me that this testimony is consistent with Chen's other testimony that the smugglers entirely controlled his immigration process without his input. Your Honor, I do believe some of those explanations have been provided by counsel but not provided by the petitioner. But in any event, I would point out at AR-175 that petitioner testified that he knew he entered Ecuador and Peru with a visa, and so that suggests that he understood what the process was in those other countries and it undermines his claim that these factors that Your Honor mentioned prevented him from providing at least some sort of coherent account of how he entered. Even if his account was just, I don't know, it was just too shifting to compel. Let's go back to his claim. His claim is of persecution based on China's family policies, and one of the things I find remarkable is that the IJ didn't cite a single family policy case of which we have a long line from China. When it discussed past persecution, it cited to Gu and Guo, which were both persecution on account of religious activities, not persecution on account of imposing the family sterilization policies. But that's what Chen's claim is. Your Honor, I believe that you're referencing the immigration judge's merits finding, the alternative merits finding, but the board did not affirm that finding. The board found that because it affirmed the adverse credibility finding and that was dispositive, it didn't need to reach the alternative merits. Don't you think the adverse credibility finding is infected by the IJ's clear lack of understanding of this line of cases about the family sterilization policies in China? In the last case I had in this, we learned that maybe China's official position is changing and that across the more urban areas in China, they're relaxing those family sterilization, but they're still being enforced in some rural areas. And I'm finding this record doesn't even tell me where this person was, what the relationship with the enforcement of the policies at the time, no analysis of the case law that governs that. It seems very remiss in that way when the claim is about that. I understand, Your Honor, but I think one is that the merits finding is not before the court and two, I think that your question about whether it infected the immigration judge's adverse credibility finding, I think that the record shows that the immigration judge understood the basis of the claim. Chen's entire asylum application was predicated on his testimony that his wife's medical problems prevented her from being sterilized in his place, and that's why they were coming after him. Right. You understand the claim, clearly. And I think that the immigration judge did as well. He pointed out that his testimony that was vague and evasive about the wife's medical problems was material to his claim. It really turned on that fact that he didn't provide many details on, specifically, why those problems prevented her from being sterilized when he admitted she would have complied with the order had her medical problems not been there. So I am well over my time, unless Your Honors have any questions. No. Okay.  Thank you, Your Honors. We'll give you about a minute to respond to some of these questions. This case is an excellent case because the evidence is clear that the petitioner did violate the one-child policy. He had two children, a girl and a boy, born about a year and a half apart. So it's a very, very strong case with very strong facts about an abortion, a forced IUD, two C-sections that caused gynecological – I mean, this woman was scarred from what happened. And the petitioner had good cause to run away. And, in fact, it's very, very likely that he ran away for the right reasons. And the judge was focusing on facts that were petty, that was insignificant, unreasonable. And we truly believe that the petitioner was – justice was not served in the petitioner's case. We ask that you send it back to the BIA and find that the petitioner – that the evidence is not strong enough to find him not credible and ask that the BIA decide the issue of persecution. Because on a footnote, the board said that we're not going to address persecution. We just agree with the judge that he was not credible. But we feel that the evidence is not strong – I'm sorry. We feel that the judge erred in finding the petitioner lacked credibility. We ask that you reverse that decision and that you ask the board to now consider whether there was past persecution in this case and the fear of future persecution. All right. Thank you, counsel. Thank you so much. Chindy Whitaker will be submitted, and this session of the court is adjourned for today. Thank you. We understand. We accept it.
judges: D.W. Nelson, Wardlaw, Pratt